Slip Op. 11-90

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
-------------------------------------------------x
                                                 :
YANGZHOU BESTPAK GIFTS &                         :
CRAFTS CO., LTD.,                                :
                                                 :
            Plaintiff,                           :
                                                 :
      v.                                         :    Before: Judith M. Barzilay, Senior Judge
                                                 :    Court No. 10-00295
UNITED STATES,                                   :
                                                 :
            Defendant,                           :
                                                 :
      and                                        :
                                                 :
BERWICK OFFRAY LLC,                              :
                                                 :
            Defendant-Intervenor.                :
                                                 :
-------------------------------------------------x
```

## OPINION & ORDER

[The court grants in part and denies in part Plaintiff's Motion for Judgment upon the Agency Record and remands for further proceedings.]

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP (*Bruce M. Mitchell, Mark E. Pardo,* and *Andrew T. Schutz*), for Plaintiff Yangzhou Bestpak Gifts & Crafts Co., Ltd.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Renee Gerber*); and *Scott D. McBride*, U.S. Department of Commerce, Of Counsel, for Defendant United States.

Pepper Hamilton LLP (*Gregory C. Dorris*), for Defendant-Intervenor Berwick-Offray LLC.

Dated:  July 26, 2011

Barzilay, Senior Judge:  Plaintiff Yangzhou Bestpak Gifts & Crafts Co., Ltd. ("Plaintiff" or "Bestpak") challenges a certain methodology used by the U.S. Department of Commerce ("the Department" or "Commerce") to calculate the separate rate margin in *Narrow Woven Ribbons With Woven Selvedge From the People's Republic of China*, 75 Fed. Reg. 41,808 (Dep't of Commerce July 19, 2010) ("*Final Determination*"), as amended *Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China*, 75 Fed. Reg. 51,979 (Dep't of Commerce Aug. 24, 2010) (amended final determination).  First, Plaintiff avers that the methodology used by Defendant does not accord with law.  Pl.'s Br. 8-22.  Bestpak next argues that Commerce did not support with substantial evidence the calculated separate rate, where the agency used a simple average of the adverse facts available rate and the *de minimis* rate assigned, respectively, to the two mandatory respondents.  Pl.'s Br. 8-22.  Defendant counters that the Department reasonably interpreted the relevant statutory provisions and that the selected methodology comports with law.[1]  Def.'s Br. 8-22.  For the reasons below, the court finds that Commerce's use of a simple average of a zero or *de minimis* rate with a rate based on adverse facts available to calculate a separate rate accords with law.  Nevertheless, the court also holds that in this instance the agency did not support with substantial evidence the separate rate calculated for Bestpak.

## I.  Background

On August 6, 2009, Commerce initiated an antidumping duty investigation of narrow woven ribbons from the People's Republic of China and Taiwan for the period spanning January

---

[1] Defendant-Intervenor devotes its argument principally to reciting the relevant standard of review and requests that the court find the agency's construction of the statute to be reasonable.  Def.-Intervenor's Br. 7-17.

1 to June 30, 2009.  *See Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China and Taiwan*, 74 Fed. Reg. 39,291, 39,292 (Dep't of Commerce Aug. 6, 2009) (initiation of investigations).  At that time, Commerce issued quantity and data value questionnaires to all known Chinese exporters and producers for the purpose of selecting mandatory respondents.  *Id*. at 39,296.  After Commerce received responses from nineteen companies, including Bestpak, Commerce decided that "it would not be practicable to determine individual dumping margins for each known exporter and/or producer . . . ."  Resp't Selection Mem. (Sept. 11, 2009), Pub. Doc. 94 at 3.  Accordingly, Commerce selected the two largest exporters and producers of the subject merchandise as mandatory respondents: Ningbo Jintian Import & Export Co., Ltd. ("Ningbo Jintian") and Yama Ribbons & Bows Co., Ltd. ("Yama").  Pub. Doc. 94 at 3.  Ningbo Jintian's former counsel withdrew their appearance on September 17, 2009, and shortly thereafter informed Commerce that the antidumping questionnaire had been forwarded to Ningbo Jintian.  Mem. to the File re: Antidumping Duty Investigation on Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China: Ningbo Jintian (Oct. 6, 2009), Pub. Doc. 109 at 1 (discussing Ningbo Jintian telephone conversation).  The company "failed to submit responses to any section of the Department's antidumping questionnaires."  *Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China*, 75 Fed. Reg. 7,244, 7,245 (Dep't of Commerce Feb. 18, 2010) ("*Preliminary Determination*").  Yama, the other mandatory respondent, participated fully throughout the investigation.  *See id*.  Bestpak filed a separate rate application to establish its de jure and de facto independence, since Commerce presumes government control of entities in non-market

economy investigations. *See* Bestpak Separate Rate Application (Oct. 5, 2009), Pub. Doc. 102 at 1-21. Notably, Bestpak did not apply to be a voluntary respondent at any time during the investigation. *Issues and Decision Mem.* (July 12, 2010), Pub. Doc. 382 at 21-22.

Commerce issued its preliminary determination on February 18, 2010. *Preliminary Determination*, 75 Fed. Reg. at 7,244. Commerce assigned Yama a *de minimis* margin and determined that Ningbo Jintian operated as part of the China-wide entity because the company "failed to demonstrate that it operates free of government control." *Id*. at 7,250, 7,253. Additionally, because Ningbo Jintian failed to provide the required information, Commerce applied adverse facts available to calculate the company's dumping margin. *Id* at 7,250-51. Commerce corroborated Ningbo Jintian's adverse facts available rate by comparing it to "model-specific margins" found for Yama to ensure that it fell within the purportedly acceptable range of selected weighted-average margins.[2] *Id.* at 7,251; Final Corroboration Mem. (July 12, 2010), Pub. Doc. 376 at 2, Conf. Doc. 375 at 2. With respect to the separate rate, Commerce averaged the *de minimis* rate of Yama and the adverse facts available rate assigned to Ningbo Jintian. *Preliminary Determination*, 75 Fed. Reg. at 7,249. In effect, the resulting separate rate equaled one half of the adverse facts available rate. *Id*.

Commerce issued its final determination on July 19, 2010. *See Final Determination*, 75 Fed. Reg. at 41,808. In the final results, Commerce confirmed the *de minimis* rate and the

---

[2] Because the model-specific margins determined for Yama during the period of investigation varied greatly, Commerce randomly selected a certain number of margins within this wide range to corroborate the adverse facts available rate. Final Corroboration Mem., Pub. Doc. 376 at 2, Conf. Doc. 375 at 2. Commerce based the margins on a very small percentage of Yama's total sales of the subject merchandise during the period of investigation. Final Corroboration Mem., Pub. Doc. 376 at 2, Conf. Doc. 375 at 2.

adverse facts available rate previously assigned to Yama and Ningbo Jintian, respectively.  *Id.* at 41,811-12.  Commerce calculated a final adverse facts available rate of 247.65% for Ningbo Jintian.  *Id.* at 41,812.  Commerce once again calculated the separate rate by averaging Ningbo Jintian's adverse facts available rate and the *de minimis* rate calculated for Yama, which resulted in a separate rate of 123.83% for Bestpak.  *Id*.  The Department explained its justification for assigning such a rate to Bestpak by noting that the statute and legislative history "explicitly permit[] such averaging."  *Issues and Decision Mem.*, Pub. Doc. 382 at 19.  Commerce also noted that it could not investigate an additional respondent due to time restraints and limited resources, and that alternative calculations suggested by Bestpak did not more accurately reflect potential dumping margins.  *Issues and Decision Mem.*, Pub. Doc. 382 at 21-23.

## II.  Subject Matter Jurisdiction & Standard of Review

The Court has exclusive jurisdiction over any civil action commenced under section 516A of the Tariff Act of 1930, codified and amended as 19 U.S.C. § 1516a(a)(2)(B)(i).  28 U.S.C. § 1581(c).  In reviewing Commerce's antidumping duty determination, the court will hold unlawful any determination "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  § 1516a(b)(1)(B)(i).

To ascertain whether Commerce's determination accords with law, the court turns to the two-part test articulated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S 837 (1984).  First, the court must determine whether Congress directly spoke to the precise question at issue and clearly expressed its purpose and intent in the governing statute.  *Id*. at 842-43.  In so doing, the Court employs traditional tools of statutory

construction, looking first to the plain meaning of the statutory text.  *See id.* at 843 n.9.  The court also may look to the statute's structure and legislative history.  *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).

If the statute does not clearly answer the relevant question, then the court must turn to the second step and decide whether the agency's interpretation amounts to a permissible construction of the statute.  *Chevron, U.S.A., Inc.*, 467 U.S. at 843.  In deciding whether the agency acted within its discretionary authority to interpret the intention and purposes of the law, the court must discern whether the Department offered a "sufficiently reasonable" interpretation of the statute.  *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450-51 (1978) (citing *Train v. Natural Res. Def. Council, Inc.*, 421 U.S. 60, 75 (1975)); *accord Am. Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed. Cir. 1986) ("Though a court may reject an agency interpretation that contravenes clearly discernible legislative intent, its role when that intent is not contravened is to determine whether the agency's interpretation is 'sufficiently reasonable.'" (citation omitted)).  To survive judicial scrutiny, Commerce's interpretation need not be "the only reasonable interpretation or even the most reasonable interpretation."  *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir. 1994).  Importantly, the Court will defer to a reasonable interpretation even where the Court might have adopted a different interpretation.  *Chevron,* 467 U.S. at 843 n.11.

In deciding whether Commerce supports its determination with substantial evidence, the court must look to whether the agency offered "more than a mere scintilla" of relevant proof.  *Univ. Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951) (citation omitted).  Substantial evidence amounts to "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion" in light of the entire record, including whatever "fairly detracts from the substantiality of the evidence." *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (quotation marks & citations omitted).  This standard requires the Department to thoroughly examine the record and "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).  That the Court may draw two inconsistent conclusions "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Commc'n*, 383 U.S. 607, 620 (1966) (citation omitted).

### III.  Discussion

**A.  Commerce Reasonably Interpreted the Relevant Statute When It Used the Subject Methodology to Calculate the Separate Rate for Bestpak**

In non-market economy investigations, the Department presumes that respondent companies operate under foreign government control.  *Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997); *Qingdao Taifa Grp. Co. v. United States*, 33 CIT __, ___, 637 F. Supp. 2d 1231, 1240 (2009).  In the course of its investigations, Commerce affords respondents the opportunity to establish an absence of de jure and de facto government control and thereby secure a separate rate.  *Sigma Corp.*, 117 F.3d at 1405; *Qingdao Taifa Grp. Co.*, 33 CIT at ___, 637 F. Supp. 2d at 1240-41.  To calculate the separate rate for non-individually investigated respondents in non-market economy investigations, Commerce normally relies on the statutory provision in 19 U.S.C. § 1673d(c)(5)(A), which describes the all-others rate used in market economy investigations.  *Bristol Metals L.P. v. United States,* 34 CIT __, ___, 703 F. Supp. 2d

1370, 1378 (2010) (citation omitted); *see Amanda Foods (Vietnam) Ltd. v. United States*, 33 CIT __, ___, 647 F. Supp. 2d 1368, 1379 (2009). The statute instructs the Department to weight-average the rates calculated for the investigated parties, excluding *de minimis* or zero rates and rates based on facts available, to determine the separate rate. § 1673d(c)(5)(A). However,

> [i]f the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under [19 U.S.C. § 1677e], the administering authority may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

§ 1673d(c)(5)(B). According to the Statement of Administrative Action of the Uruguay Round Agreements Act, when Commerce's investigation results entirely in zero or *de minimis* rates, or rates calculated under § 1677e, the agency should weight-average the zero and *de minimis* margins and margins determined pursuant to facts available. Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201 ("Statement of Administrative Action"). If this "expected methodology" does not prove feasible, however, Commerce may use any other reasonable method. *Id*. Importantly, any methodology used by Commerce must reasonably reflect the potential dumping margins for non-investigated exporters or producers. *Id.*

The relevant statutory text does not directly address the precise question at issue: whether it is permissible to use a simple average to calculate separate rates in a non-market economy investigation where one respondent receives an adverse facts available rate and the other receives

a *de minimis* rate.  § 1673d(c)(5)(A).  Therefore, the Court must determine whether Commerce reasonably interpreted the statute under the second step of *Chevron*.  467 U.S. at 843.

Bestpak argues that Commerce's method does not accord with law or constitute a permissible interpretation of the statute.  Pl.'s Br. 8-14.  Bestpak contends that distinct circumstances in market and non-market economy investigations render the methodology unlawful, Pl.'s Br. 14-16, and that the statute does not permit Commerce to include the adverse facts available rate in the calculation of a separate rate, Pl.'s Reply 3.  Defendant and Defendant-Intervenor Berwick Offray, LLC ("Berwick Offray") counter by arguing that Commerce's reasonable interpretation of the statute compels *Chevron* deference.  Def.'s Br. 10-12; Def.-Intervenor's Br. 7-17.  Moreover, Defendant avers that the methodology comports with the relevant statutory language, the legislative history, and Commerce's past practices.  Def.'s Br. 10-19.

The court finds that the methodology used by Commerce reasonably accords with the relevant statutory language and legislative history.  The statutory exception to the general rule for determining non-investigated respondents allows Commerce to use any reasonable method, and explicitly states that the administering authority may average the "estimated weighted average dumping margins determined for the exporters and producers individually investigated."  § 1673d(c)(5)(B).  The legislative history reinforces this interpretation:  the Statement of Administrative Action provides that Commerce should use the expected methodology when the record contains only zero and *de minimis* margins, and margins determined pursuant to adverse

facts available. H.R. Doc. No. 103-316 at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201.[3] Therefore, because the agency employed a reasonable methodology derived from the relevant statutory language, the court affords the appropriate deference due to Commerce. *See Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999) ("The methodologies relied upon by Commerce in making its determinations are presumptively correct."); *Hynix Semiconductor, Inc. v. United States*, 29 CIT 995, 1000, 391 F. Supp. 2d 1337, 1342 (2005).

## B. Commerce Did Not Support with Substantial Evidence the Separate Rate Assigned to Bestpak

Bestpak argues that the separate rate does not reasonably reflect potential dumping margins, especially given that Commerce essentially halved the rate assigned to Ningbo Jintian, which itself was determined by use of adverse facts available. Pl.'s Br. 14-22. Plaintiff contends that the calculated separate rate belies the overriding purpose of the legislation — to calculate antidumping duties accurately, fairly, and realistically. Pl.'s Br. 8-22; Pl.'s Reply 4. Consequently, Bestpak maintains that no rational connection supports the agency determination and that the company should receive the same *de minimis* rate as Yama. Pl.'s Br. 14-22. Conversely, Defendant alleges that Commerce reasonably averaged an adverse facts available rate with a *de minimis* rate and that the resulting separate rate reasonably reflects Bestpak's potential dumping margins. Def.'s Br. 19-22. Additionally, Berwick Offray avers that Bestpak could have applied for voluntary respondent status and that the company's failure to do so

---

[3] In Section 3512(d) of Title 19 of the United States Code, Congress recognized that the Statement of Administrative Action "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

diminishes its claims. Def.-Intervenor's Br. 13-14. Berwick Offray notes that a separate rate of one-half of an adverse facts available rate falls within the range of rates for this industry and subject merchandise, when compared to Yama's model-specific margins. Def.-Intervenor's Br. 14-15. Finally, Berwick Offray contends that no evidence supports the claim that Bestpak and other separate rate respondents would more likely receive a *de minimis* rate than the corroborated adverse facts available rate. Def.-Intervenor's Br. 14-16.

The court finds that Commerce failed to support with substantial evidence how, under the unique circumstances of this investigation where the agency selected only two mandatory respondents,[4] a simple average of a *de minimis* rate and a rate based on adverse facts available reasonably reflects Bestpak's potential dumping margins. Commerce does not explain how the separate rate of 123.83% relates to Bestpak's commercial activity. The agency has not provided information suggesting that Bestpak dumps its sales at such levels or that the calculated separate rate represents the company's potential pricing practices. *See Nat'l Knitwear & Sportswear Ass'n v. United States*, 15 CIT 548, 558, 779 F. Supp. 1364, 1373 (1991) (excluding "best information available" rate to calculate estimated dumping margins because it does not reasonably reflect pricing practices for subject merchandise). Moreover, the calculated separate rate is exceptionally larger than the rate calculated for the lone cooperative mandatory respondent, s*ee Final Determination*, 75 Fed. Reg. at 41,811, and without a more rigorous explanation the court cannot accept that the separate rate reflects Bestpak's commercial activity,

---

[4] While the statute allows Commerce to select mandatory respondents based on the largest exporters and producers by volume, 19 U.S.C. § 1677f-1(c)(2)(B), Commerce put itself in a precarious situation when it selected only two mandatory respondents.

*see Nat'l Knitwear & Sportswear Ass'n*, 15 CIT at 558, 779 F. Supp. at 1372-73.  Finally, that the Statement of Administrative Action allows for the use of a simple average of an adverse facts available rate and zero or *de minimis* rates does not absolve the agency from ensuring that a separate rate reasonably reflects potential dumping margins, H.R. Doc. No. 103-316 at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201, or from rationally connecting the record evidence with the final conclusion, *see Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43.

  Even more troubling to the court, Commerce associates a certain level of government control with Bestpak even though the company clearly has established an absence of de jure or de facto control.  *See generally* Bestpak Separate Rate Application (Oct. 5, 2009), Pub. Doc. 124.  The Department's approach in this investigation has transformed the remedial antidumping duty laws into a form of punishment, whereby Bestpak, whose only failure lies in the agency not selecting it for individual examination, must pay a separate rate tainted by adverse data associated with a government-controlled, uncooperative mandatory respondent.  *See Nat'l Knitwear & Sportswear Ass'n*, 15 CIT at 558, 779 F. Supp. at 1373 (noting that antidumping duty law "is intended to be remedial, not punitive" in nature); *accord Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001) ("[T]he purpose of the statutory provisions is to determine antidumping margins 'as accurately as possible.'" (citation omitted)).

  The facts of the present action prevent the court from following *Laizhou Auto Brake Equip. Co. v. United States*, Slip Op. 08-71, 2008 WL 2562915 (CIT June 26, 2008).  In that case, the Court upheld the agency's calculation of a separate rate where it "'weight-averag[ed]

the individual rates of all five of the mandatory respondents, including two *de minimis* rates, one rate based on adverse facts available and two additional calculated rates.'"[5]  *Id.* at *9 (internal quotation marks & citation omitted).  Importantly, in that administrative proceeding, Commerce stressed that it did not apply adverse facts available to the voluntary respondents, but instead applied a statistically valid separate rate representative of producers as a whole.  *Id*.  In the subject investigation, however, Commerce selected only two mandatory respondents, one of which did not cooperate, thus presenting a substantially dissimilar factual scenario.  Therefore, *Laizhou Auto Brake Equip. Co.* does not help the court's analysis.

The court also finds unavailing Defendant's reliance on *Changzhou Wujin Fine Chem. Factory Co. v. United States*, Slip Op. 10-85, 2010 WL 3239213 (CIT Aug. 5, 2010).  The parties in that case disputed which data the agency should have used when calculating the adverse facts available and separate rates.  *Id*. at *4.  While some language of that decision seems tacitly to approve use of the simple average methodology at issue in this case, the court did not directly address the validity of the methodology.  *Id* at *4.  Nevertheless, while the court explains above that the methodology generally accords with law, that does not excuse Commerce from the task of articulating the requisite rational connection between the record facts and the conclusions when the agency employs the methodology in a particular agency proceeding.  *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43.  Besides, Commerce knows well that even if the Court sanctioned use of the methodology in *Changzhou Wujin Fine Chem. Factory Co.*, "each

---

[5] Equally of note, Commerce used a statistically valid sampling methodology in *Laizhou Auto Brake Equip. Co.*, whereas the agency in the instant case selected the largest exporters by volume in the subject proceeding.  *Compare* 2008 WL 2562915 at *8-10, *with Preliminary Determination*, 75 Fed. Reg. at 7,245.

agency determination is *sui generis*, involving a unique combination and interaction of many variables, and therefore a prior administrative determination is not legally binding on other reviews before this court." *U.S. Steel Corp. v. United States*, 33 CIT __, ___, 637 F. Supp. 2d 1199, 1218 (2009); *accord Nucor Corp. v. United States*, 414 F.3d 1331, 1340 (Fed. Cir. 2005).

Finally, the court does not find persuasive Defendant-Intervenor's position that Bestpak's failure to request voluntary respondent status undermines its claim. While the court agrees that filing a voluntary respondent application arguably may have helped Bestpak secure an individually investigated rate, the company had no guarantee that Commerce would in fact grant it such status, even though one of the mandatory respondents refused to participate in the proceeding. *Preliminary Determination*, 75 Fed. Reg. at 7,245, 7,249. Regardless, that Bestpak declined to submit voluntary respondent information does not undercut Commerce's duty to calculate antidumping duty rates as accurately as possible, s*ee Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc.*, 268 F.3d at 1382, and to ensure that any separate rate reasonably reflects potential dumping margins, H.R. Doc. No. 103-316 at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201.

## IV. Conclusion

For the foregoing reasons, the court hereby

**ORDERS** that Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**; and further

**ORDERS** that the agency did not support with substantial evidence the separate rate assigned to Bestpak. The court **REMANDS** the issue to Commerce so that the agency may more

**Court No. 10-00295** **Page 15**

thoroughly explain whether the separate rate reasonably reflects Bestpak's potential dumping margins, addressing the court's concerns stated in the opinion.  If the agency cannot provide a reasonable explanation, then Commerce shall calculate a new separate rate that accurately reflects Bestpak's commercial activity.


Dated:   July 26, 2011                                                                /s/ Judith M. Barzilay                
        New York, NY                                                         Judith M. Barzilay, Senior Judge